## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

|  |  |  |
|---|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No.:** |
| **LANGDALE FOREST PRODUCTS COMPANY,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## <u>COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT</u>

COMES NOW Plaintiff Norfolk Southern Railway Company ("Norfolk Southern"), for its complaint against Defendant, Langdale Forest Products Company ("Langdale"), and states the following:

1.      Norfolk Southern brings this action against Langdale.   Langdale has acted in derogation of its contractual duties by failing to indemnify Norfolk Southern against the claims raised in *Estate of Morgan Sheffield, et al. v. Norfolk Southern Railway Company and Earl Watson*, Civil Action No. 19-SCCV-090860, pending in the State Court of Bibb County, Georgia (the "*Sheffield* Lawsuit").   Langdale's contractual breaches have left Norfolk Southern unreimbursed for indemnified costs it has incurred in connection with its defense of the *Sheffield* lawsuit and at risk of a judgment or other resolution of that lawsuit without the benefit of the indemnification to which it is entitled.

2.      This action arises out of a July 3, 2019 fatal crossing collision (the "Collision") that occurred at Crossing No. 729353F/MP 306.74-H in Chauncey, Georgia (the "Langdale Private Crossing").

3.      The crossing at which the Collision occurred is subject to a private crossing agreement between Norfolk Southern and Langdale, entered on December 2, 1992 (the "Private Crossing Agreement"). The Private Crossing Agreement was in effect at the time of the Collision.  The Private Crossing Agreement includes Langdale's contractual undertaking to indemnify Norfolk Southern in the event a party asserts a liability claim against Norfolk Southern for bodily injury or death "occurring or arising in any manner from railroad operations at . . . the Crossing."  Private Crossing Agreement, ¶ 6.

4.      The Collision gave rise to the *Sheffield* Lawsuit, a liability claim by the Estate of Morgan Sheffield against Norfolk Southern.

5.      Despite repeated demands by Norfolk Southern, Langdale has failed to acknowledge its obligation to indemnify Norfolk Southern with respect to the *Sheffield* Lawsuit and has failed to indemnify Norfolk Southern for amounts Norfolk Southern has incurred to date in defending against the *Sheffield* Lawsuit, necessitating this action.

6.      Norfolk Southern seeks a declaration of the rights, duties, and liabilities of Langdale pursuant to the Private Crossing Agreement with respect to the *Sheffield* Lawsuit. Norfolk Southern also seeks compensatory damages from Langdale for breach of contract in the form of its failure to perform its duty to indemnify Norfolk Southern for the costs of its defense against the *Sheffield* Lawsuit.

**PARTIES**

7.      Plaintiff Norfolk Southern is and at all times pertinent was a Virginia corporation with its principal place of business in Norfolk, Virginia.

8.      Defendant Langdale is and at all times pertinent was a company incorporated under the laws of the State of Georgia with its principal place of business in Valdosta, Georgia. Defendant Langdale may be served through its registered agent, James H. Langdale, 1202 Madison Highway, Valdosta, Georgia 31601.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  This Action is between citizens of different states and the amount in controversy exceeds the $75,000 jurisdictional minimum because the potential liability and anticipated costs of defense in the *Sheffield* Lawsuit exceed that amount based on the allegations in the Complaint.

10.     This Court has supplemental jurisdiction over Norfolk Southern's claims for breach of contract and attorney's fees in this action pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Langdale maintains its principal place of business in this District.

**ACTUAL CONTROVERSY**

12.     This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. § 2201 because Norfolk Southern and Langdale are engaged in an actual controversy susceptible to specific relief over the meaning of provisions in the Private Crossing Agreement.  Because the parties are residents of different states and the dispute between them exceeds $75,000, this controversy is within the jurisdiction of this Court.

## FACTUAL BACKGROUND

### A.    The Private Crossing Agreement

13.    On December 2, 1992, Norfolk Southern and Langdale entered into the Private Crossing Agreement.  A true and correct copy of the Private Crossing Agreement is attached as **Exhibit 1**.

14.    Through the Private Crossing Agreement, Langdale was granted a license to use the existing private crossing to traverse the Norfolk Southern railroad tracks in order to reach the Langdale property.

15.    As a part of its obligation, Langdale is required to restrict crossing use.  Langdale has agreed that "[n]o person other than [Langdale], its agents, employees, patrons, or invitees shall be permitted to use the Crossing."  Private Crossing Agreement, ¶ 4.

16.    Langdale also has agreed that "[i]n each instance when a vehicle approaches the Crossing, it shall stop and shall not proceed over said track of Railroad until the driver has ascertained that no train . . . is approaching the Crossing."  Private Crossing Agreement, ¶ 5.

17.    There is risk associated with being granted the ability to utilize a private crossing, which Langdale has acknowledged.  Langdale "accepts the privilege hereby granted with full cognizance of the risk of loss of life . . . that may be caused by railroad operations at . . . the Crossing and by the . . . use . . . of the Crossing by [Langdale] or others."  Private Crossing Agreement, ¶ 6.

18.    Langdale agreed that it would assume "the sole risk" associated with the private crossing and agreed that Norfolk Southern "shall not have any responsibility whatever for any such loss, injury or damage."  Private Crossing Agreement, ¶ 6.

19.    In recognition of the potential for an accident at the Langdale Private Crossing, paragraph 6 of the Private Crossing Agreement includes Langdale's agreement to:

> [I]ndemnify and save harmless [Norfolk Southern] … from and against all liability, claims, loss, damage, expense (including attorneys' fees) or costs for personal injuries (including death) and/or property damage to whomsoever or whatsoever, occurring or arising in any manner from railroad operations at or in the vicinity of the Crossing and by the . . . use . . . of the Crossing by [Langdale] or others..  The indemnity obligations imposed upon [Langdale] by this paragraph shall be absolute and shall not be affected by the negligence, either primary or contributory, of the Railroad or its officers, agents and employees.

Private Crossing Agreement, ¶ 6.

20.    The Private Crossing Agreement also directs Langdale to buy Commercial General Liability ("CGL") coverage "containing contractual liability coverage" for its indemnification obligations under the Agreement.  The insurance provision of the Private Crossing Agreement states that:

> Prior to entry on Railroad's property or use of the Crossing, [Langdale] shall procure and maintain during the life of this Agreement a policy of general liability insurance, containing contractual liability coverage, with a combined single limit of not less than $2,000,000 each occurrence. Said insurance shall be of such form and content as may be acceptable to Railroad.

Private Crossing Agreement, ¶ 8.

21.    Norfolk Southern has required Langdale to provide Norfolk Southern with Certificates of Insurance that identify the CGL policies that Langdale has purchased over the years.  In accordance with the Private Crossing Agreement, Langdale acquired a CGL Policy from LM Insurance Corporation, Policy Number TB5691527587059, for the policy period that includes the date on which the Collision occurred.  A true and correct copy of a Certificate of Insurance identifying Langdale's insurance is attached as **Exhibit 2.**

22.     Langdale also acquired an excess umbrella policy from Great American Insurance

Company, Policy No. TUE478494013, for the policy period that includes the date on which the

Collision occurred. *See* **Exhibit 2.**

23.     Both policies include coverage for Langdale's contractual liability.

### C.     The Sheffield Lawsuit

24.     On July 3, 2019, Mr. Morgan Sheffield had driven a load of logs to Langdale's

tenant, a pole peeling and storage facility operated by Koppers Utility and Industrial Products,

Inc., who, on information and belief, leased or acquired the facility from Sweetwater Wood

Holdings, LLC ("Sweetwater").

25.     After unloading the logs, Mr. Sheffield proceeded toward the crossing and the

public highway located on the far side of the crossing.  When he reached the Langdale Private

Crossing, Mr. Sheffield did not stop despite the presence of two stop signs, a private crossing

sign which contains a railroad cross-buck, and a second railroad cross-buck.

26.     Mr. Sheffield also did not ensure that the crossing was clear of an oncoming train

before making use of the Langdale Private Crossing.

27.     In fact, at the time that Mr. Sheffield was approaching the Langdale Private

Crossing, a Norfolk Southern train also was approaching the crossing.  Despite the oncoming

train, Mr. Sheffield drove his truck up to and across the tracks, and stopped at the intersection

with the public highway, leaving the trailer behind his truck straddling the crossing in the path of

the oncoming train.

28.     The engineer applied the brakes before impact.  However, the collision was

unavoidable.  The train struck the trailer of Mr. Sheffield's truck.   Mr. Sheffield died as a result

of the collision.

29.     On December 30, 2019, the Estate of Morgan Sheffield, acting by and through its Temporary Administrators, April Moore and James Danny Sheffield, the parents of Morgan Sheffield, filed a complaint (the "*Sheffield* Complaint") alleging Norfolk Southern's liability for damages as a result of the accident at the Langdale Private Crossing.  The *Sheffield* Complaint seeks millions of dollars in damages, including lost wages totaling between $1,686,174.31 and $2,154,626.03; funeral and burial expenses of at least $15,785.40; medical expenses in the amount of $69,192.48; and unspecified damages related to pain and suffering, as well as punitive damages.  A true and correct copy of the *Sheffield* Complaint is attached as **Exhibit 3**.

30.     The *Sheffield* Complaint concedes, *inter alia*, that Morgan Sheffield failed to stop before using the Langdale Private Crossing even though there are, among other signs, two stop signs before the crossing.  *Sheffield* Complaint, ¶ 22.

31.     Through the Private Crossing Agreement, Langdale had committed that it would maintain and control the use of the Langdale Private Crossing.  That control extended to an express agreement that Langdale would ensure that vehicles approaching the crossing would stop and not proceed to use the crossing until the driver ascertained that there was no approaching train.

32.     Langdale's failure to comply with its contractual obligations, including its obligation to ensure that "[i]n each instance when a vehicle approaches the Crossing, it shall stop and shall not proceed over said track of Railroad until the driver has ascertained that no train . . . is approaching the Crossing," Private Crossing Agreement, ¶ 5, resulted in the Collision.

33.     Norfolk Southern provided notice of the Collision and the *Sheffield* Lawsuit to Langdale and requested that Langdale indemnify Norfolk Southern pursuant to the Private Crossing Agreement.

34.    Norfolk Southern's attorneys wrote to Langdale in relation to the Collision and the *Sheffield* Lawsuit on five separate occasions: August 19, 2019, January 9, 2020, March 11, 2020, March 31, 2020, and June 18, 2020.

35.    In the letters, Norfolk Southern requested a timely response to its request that Langdale indemnify Norfolk Southern for the costs of defending against the *Sheffield* Lawsuit and for any eventual judgment or settlement.  True and correct copies of the five letters sent to Langdale are attached as **Exhibit 4, 5, 6, 7, and 8.**

36.    At the time of filing the present Complaint, Norfolk Southern has received no response from Langdale.

37.    Norfolk Southern has incurred expenses by continuing to investigate and defend the claims raised in the *Sheffield* Lawsuit, including but not limited to, attorneys' fees already incurred.  Norfolk Southern expects to incur additional costs, including attorneys' fees, and, Mr. Sheffield's Estate has demanded a monetary judgment against, or compromise by, Norfolk Southern in connection with the ongoing *Sheffield* Litigation.

## CLAIMS FOR RELIEF AGAINST LANGDALE

### Count One
### Declaratory Judgment Regarding Langdale's Obligation
### to Indemnify Norfolk Southern

38.    Norfolk Southern incorporates paragraphs 1 – 37 as if set forth fully herein.

39.    Pursuant to the Private Crossing Agreement, Langdale has an "absolute" contractual obligation to indemnify Norfolk Southern for liability and attorneys' fees "for personal injuries (including death) and/ or property damage . . . occurring or arising in any manner from railroad operations at . . . the Crossing" and by the . . . use . . . of the Crossing by [Langdale] or others.  Private Crossing Agreement, ¶ 6.  The indemnity provision also bound

Langdale to the same indemnity obligations for a death "occurring or arising in any manner from . . . the . . . use . . . of the Crossing by [Langdale] or others." *Id.*

40.     The *Sheffield* Lawsuit is a claim for a personal injury, death, which arose from railroad operations at the Langdale Private Crossing.

41.     Likewise, the *Sheffield* Lawsuit is a claim for a personal injury, death, which arose from the use of the Langdale Private Crossing by Langdale and others – including Mr. Sheffield.

42.     Norfolk Southern's alleged liability with respect to claims asserted in the *Sheffield* Complaint arises, in whole or in part, out of the ongoing railroad operations at the Langdale Private Crossing and the use of the crossing by Langdale and others – including Mr. Sheffield.

43.     As a result, Langdale has a duty to indemnify Norfolk Southern under the Private Crossing Agreement with respect to the claims asserted against it in the *Sheffield* Complaint.

44.     Norfolk Southern provided notice of the Collision and the *Sheffield* Lawsuit and requested Langdale to indemnify Norfolk Southern against the claims raised in relation to the *Sheffield* Lawsuit on five separate occasions.

45.     Langdale has failed or refused to respond to Norfolk Southern's repeated demands for indemnification. Langdale has not accepted its obligation to indemnify Norfolk Southern in the event of a judgment or settlement of the *Sheffield* Lawsuit.

46.     Accordingly, an actual controversy of a justiciable nature has arisen and exists between Norfolk Southern and Langdale concerning the allegations set forth in this Count One.

**Count Two**
**Langdale's Continuing Breach of Contract Regarding**
**Its Duty to Indemnify Norfolk Southern**

47.     Norfolk Southern incorporates paragraphs 1 – 46 as if set forth fully herein.

48.     The Collision that resulted in Mr. Sheffield's death and gave rise to the *Sheffield* Lawsuit arose from railroad operations at the Langdale Private Crossing and the use of the crossing by Langdale and others, including Mr. Sheffield.

49.     The *Sheffield* Lawsuit is a claim for personal injury and death which arose from railroad operations at the Langdale Private Crossing and the use of the crossing by Langdale and others – including Mr. Sheffield.

50.     The Private Crossing Agreement provides that Langdale is obligated to indemnify Norfolk Southern for claims against Norfolk Southern for personal injury, including death, arising from railroad operations at the Langdale Private Crossing and for personal injury, including death, arising from the use of the crossing by Langdale and others – including Mr. Sheffield.

51.     Langdale has an express contractual duty to indemnify Norfolk Southern under the Private Crossing Agreement with respect to the claims asserted against Norfolk Southern in the *Sheffield* Complaint.  The contractual duty extends to "expense (including attorneys' fees) or costs for personal injuries (including death)."

52.     Norfolk Southern has already incurred expenses, including attorneys' fees, in its defense of the *Sheffield* Lawsuit.

53.     Norfolk Southern continues to incur expenses, including attorneys' fees, in its defense of the *Sheffield* Lawsuit.

54.     Langdale has failed to perform its contractual duty to indemnify Norfolk Southern from and against expenses, including attorneys' fees, incurred in defense of the *Sheffield* Lawsuit.

55.     Langdale's failure to perform its contractual duty to indemnify Norfolk Southern is a breach of the Private Crossing Agreement.

56.     As a direct and proximate result of Langdale's breach of its contractual obligation to indemnify, Norfolk Southern has incurred damages in an amount to be determined at trial.

## Count Three
## Langdale's Breach of Contract Regarding Its Duty to
## Control Vehicular Traffic Using the Langdale Private Crossing

57.     Norfolk Southern incorporates paragraphs 1 – 56 as if set forth fully herein.

58.     The Private Crossing Agreement obligates Langdale to maintain the property and control the use of the Langdale Private Crossing.

59.     As a part of its obligation, Langdale is required to restrict crossing use to "its agents, employees, patrons, [and] invitees."  Private Crossing Agreement, ¶ 4.

60.     Langdale has agreed that "[i]n each instance when a vehicle approaches the Crossing, it shall stop and shall not proceed over said track of Railroad until the driver has ascertained that no train . . . is approaching the Crossing."  Private Crossing Agreement, ¶ 5.

61.     When using the Langdale Private Crossing, Mr. Sheffield was its invitee.

62.     Mr. Sheffield failed to stop before using the Langdale Private Crossing even though there are, among other signs, two stop signs posted before the crossing.

63.     The Private Crossing Agreement required Langdale to insure that its invitees, including Mr. Sheffield, operating a vehicle approaching the Langdale Private Crossing would stop and not use the crossing until the driver ascertained that there was no approaching train.

64.     Mr. Sheffield did not stop his vehicle and ascertain that there was no approaching train before using the Langdale Private Crossing.

11

65.     Langdale's failure to comply with its contractual obligations resulted in the Collision.

66.     Langdale's failure to perform its contractual duty to control vehicular traffic using the Langdale Private Crossing is a breach of the Private Crossing Agreement.

67.     As a direct and proximate result of Langdale's breach of its contractual obligation, Norfolk Southern has incurred damages in an amount to be determined at trial.

## Count Four
## Expenses of Litigation

68.     Norfolk Southern incorporates paragraphs 1 – 67 as if set forth fully herein.

69.     Under O.C.G.A. § 13-6-11, the expenses of litigation shall be allowed as a part of the damages where the defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense.

70.     Pursuant to the Private Crossing Agreement, Langdale has an "absolute" contractual obligation to indemnify Norfolk Southern for liability and attorneys' fees "for personal injuries (including death) and/ or property damage . . . occurring or arising in any manner from railroad operations at . . . the Crossing and by the . . . use . . . of the Crossing by [Langdale] or others."  Private Crossing Agreement, ¶ 6.

71.     Langdale has acted in bad faith, been stubbornly litigious, and caused Norfolk Southern unnecessary trouble and expense by failing to accept its indemnification obligations under the Private Crossing Agreement and indemnify Norfolk Southern with regard to the *Sheffield* Lawsuit.

72.     As a result of Langdale's actions, Norfolk Southern is entitled to recover its attorney's fees and expenses of ligation in accordance with O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Norfolk Southern prays that this Court enter judgment as follows

A.      On its First Cause of Action, enter a declaratory judgment in favor of Norfolk Southern declaring that, under the Private Crossing Agreement, Langdale is obligated to indemnify Norfolk Southern for liabilities and expenses, including attorneys' fees, arising out of the *Sheffield* Action.

B.      On its Second Cause of Action, find that Langdale breached its duty to indemnify under the Private Crossing Agreement with respect to the *Sheffield* Lawsuit and award damages in an amount to be determined at trial.

C.      On its Third Cause of Action, find that Langdale breached its duty to control vehicular traffic using the Langdale Private Crossing and award damages in an amount to be determined at trial.

D.      On its Fourth Cause of Action, award damages, costs and attorney's fees against Langdale for bad faith conduct under OCGA § 13-6-11.

E.      On all Causes of Action, award pre-judgment interest, post-verdict and post-judgment interest, the fees and costs of bringing this action until and including the rendition of judgment, and all other just and equitable relief.

## REQUEST FOR JURY TRIAL

Norfolk Southern requests trial by jury of twelve on all issues, claims, and defenses to the fullest extent permitted by law.

Respectfully submitted, this 29th day of July, 2020.

/s/ *Amanda Rodman Smith*
AMANDA RODMAN SMITH
Georgia Bar No. 727735
WALKER S. STEWART
Georgia Bar No. 221715
*Attorneys for Plaintiff*
*Norfolk Southern Railway Company*

HALL, BLOCH, GARLAND & MEYER, LLP
P.O. Box 5088
Macon, Georgia 31208-5088
478-745-1625
478-471-8822 (fax)
amandasmith@hbgm.com
walkerstewart@hbgm.com