**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

|  |  |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,**  Plaintiff.  v.  **LANGDALE FOREST PRODUCTS COMPANY,**  Defendant. | Case No. 7:20-CV-147 (HL) |

## ORDER

Before the Court is Plaintiff Norfolk Southern Railway Company ("Norfolk Southern")'s Motion for Partial Summary Judgment and Defendant Langdale Forest Products Company ("Langdale")'s Motion for Summary Judgment.  For the reasons explained below, Norfolk Southern's motion (Doc. 33) is **GRANTED in part** and **DENIED in part**, and Langdale's motion (Doc. 35) is **DENIED.**

## I. BACKGROUND

This case concerns a private crossing agreement between Norfolk Southern Railway Company ("Norfolk Southern") and Langdale Forest Products Company ("Langdale").  The following facts are undisputed.  (Docs. 33-2; 35-2; 46-1; 47-1.)

In 1986, Langdale acquired a 72-acre property located at 4059 Highway 341 in Chauncey, Georgia.  When Langdale acquired the Chauncey property, Norfolk

Southern owned an existing private railroad crossing over its mainline track that allowed access to the Chauncey property's facilities.  The Chauncey property was also accessible through an entrance on North Railroad Avenue.  In 1992, Langdale entered into a private crossing agreement with Norfolk Southern, which granted Langdale a license to use the existing private crossing to reach its facilities on the Chauncey property.  (Doc. 23-1.)

Several clauses of the private crossing agreement are at issue in the present motions.  First, the private crossing agreement includes an indemnification clause requiring Langdale to absolutely indemnify Norfolk Southern from and against "all liability, claims, loss, damage, expense (including attorney's fees), or costs for personal injuries (including death)  and/or property damage to whomsoever or whatsoever, occurring or arising in any manner from railroad operations at or in the vicinity of the Crossing and by the construction, maintenance, use, or removal of the Crossing by [Langdale] or others."  (Doc. 23-1 ¶ 6.)    The private crossing agreement also requires Langdale to maintain "a policy of general liability insurance, containing contractual liability coverage, with a combined single limit of not less than $2,000,000 each occurrence" while the agreement was in effect.  (*Id.* ¶ 8.)  Finally, the private crossing agreement provides that "[in] each instance when a vehicle approaches the Crossing, it shall stop and shall not proceed over said track of [Norfolk Southern] until the driver has ascertained that no train or other rail equipment of [Norfolk Southern] is approaching the Crossing."  (Doc. 23-1 ¶ 5.) This provision requires Langdale to install any safety features that Norfolk

Southern deems necessary.  Under this provision, Norfolk Southern's "failure to require protective signs, barricades, or automatic warning devices [would] not affect [Langdale's] liability under the terms of this Agreement."  (*Id.*)

On July 3, 2019, after delivering wood to the Chauncey property, a driver named Morgan Sheffield stopped his truck with his trailer still straddling the private crossing.  An oncoming train collided with Sheffield's trailer.  Between August 19, 2019, and June 18, 2020, Norfolk Southern sent Langdale several letters with notice of both the collision and a subsequent lawsuit that Sheffield's estate filed against Norfolk Southern.  Langdale did not respond to the letters but instead forwarded them to its insurance company.  The insurance company denied Norfolk Southern's tender on February 4, 2020.

On July 29, 2020, Norfolk Southern filed the present lawsuit seeking a declaration of Langdale's duty to indemnify and claiming that Langdale breached its contractual duties pursuant to the private crossing agreement.  A second collision occurred on the private crossing on August 18, 2020, when a driver named Jeffrey Smith failed to yield to an oncoming train, and the train collided with Smith's tractor-trailer.  Norfolk Southern provided Langdale with notice of the collision and requested indemnification for any resulting claims.  Again, Langdale did not indemnify Norfolk Southern.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 324) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Norfolk Southern moves for partial summary judgment, seeking declaratory judgment that Langdale is required to indemnify Norfolk Southern pursuant to the private crossing agreement and summary judgment on the grounds that Langdale breached its contractual duties by failing to indemnify Norfolk Southern and failing to control vehicular traffic at the private crossing. (Doc. 33.)  Langdale cross-moves for summary judgment on Norfolk Southern's claims for declaratory

judgment, breach of contract for failure to indemnify, breach of contract for failure to control vehicular traffic, and expenses of litigation.  (Doc. 35.)

The parties' motions center on the contract between them, the private crossing agreement.  "The construction of a contract is a question of law for the court."  O.C.G.A. § 13-2-1.  When a court construes a contract to ascertain the parties' intentions, it must "loo[k] to the plain meaning of the words of the contract." *Argo v. G-Tec Sves.*, 338 Ga. App. 608, 609, 791 S.E. 2d 193, 194 (2016).  "[I]t is a cardinal rule of contract construction that a court should, if possible, construe a contract so as to not render any of the provisions meaningless and in a manner that gives effect to all of the contractual terms."  *Milliken & Co. v. Georgia Power Co.*, 354 Ga. App. 98, 1000, 839 S.E. 306, 309 (2020) (citation omitted).  Although the words of a contract typically bear their ordinary meanings, "technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this particular meaning."  O.C.G.A. § 13-2-2(2).  Additionally, courts must favor an interpretation of the contract that preserves the contract as a whole and preserves each of its parts—the entire contract must be considered when interpreting any provision of the contract.  O.C.G.A. § 13-2-2(4).

Although addressed across separate motions, the parties essentially contest the following issues: (1) whether the private crossing agreement's indemnification clause is valid or barred by Georgia's anti-indemnification statute, which determines whether declaratory judgment that Langdale has a duty to indemnify

Norfolk Southern is appropriate; (2) whether Langdale breached its contractual obligations by failing to indemnify Norfolk Southern; (3) whether Langdale breached its contractual obligations by failing to control vehicular traffic at the private crossing; and (4) whether Langdale is entitled to summary judgment as to Norfolk Southern's claim for litigation expenses.  (Docs. 33-1; 35-1.)  Each issue will be addressed in turn.

### A. The private crossing agreement is valid

Norfolk Southern argues that the private crossing agreement contains a valid and enforceable indemnification clause that requires Langdale to indemnify Norfolk Southern for the liabilities and expenses of both crossing accidents.  (Doc. 33-1 at 11.)  Langdale disagrees, contending that the indemnification clause is barred by Georgia's anti-indemnification statute, O.C.G.A. § 13-8-2(b).  (Doc. 35-1 at 7.)  Norfolk Southern also argues that even if the indemnification clause is barred by O.C.G.A. § 13-8-2(b), the private crossing agreement is saved by its mandatory insurance requirement.  (Doc. 33-1 at 22.)

*1.  The private crossing agreement's indemnification clause is not barred by Georgia's anti-indemnification statute*

Georgia's anti-indemnification statute, as written when the parties entered into the private crossing agreement, provides:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and

excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents, or employees or indemnitee is against the public policy and is void and unenforceable, providing that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

O.C.G.A. § 13-8-2(b) (1990).[1]

The original purpose of OCGA § 13–8–2(b) was to "prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied.'" *Lanier At McEver, L.P. v. Planners and Engineers Collaborative, Inc.*, 284 Ga. 204, 206, 663 S.E.2d 240, 242 (2008) (quoting *Smith v. Seaboard Coast Line R. Co.,* 639 F.2d 1235, 1242 (5th Cir. 1981)[2]). Despite the lack of legislative history or clearly stated policy reasons behind the anti-indemnification statute, it "seem[s] that construction contracts were singled out because of the possibility of hidden, or latent, defects of an extremely dangerous nature" which are "not ordinarily detectable by a lay person." *Federated Dep't Stores v. Superior Drywall & Acoustical, Inc.*, 264 Ga. App. 857, 862, 592 S.E.2d 485, 488 (2003). Georgia courts have "consistently construed [O.C.G.A. §

---

[1] A contract must be construed under the law in effect when the contract was entered. *Magnetic Resonance Plus, Inc. v. Imaging Systems Intl.,* 273 Ga. 525, 527, 543 S.E.2d 32, 35 (2001) (citing *McKie v. McKie,* 213 Ga. 582(2), 100 S.E.2d 580 (1957).

[2] Opinions issued by the Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. Cty. of Prichard, Ala.*, 661 F.2d 1206, 1207 (1981).

13-8-2(b)] more broadly than courts in other jurisdictions have construed analogous statutes." *Kennedy Development Co. v. Camp*, 290 Ga. 257, 258, 719 S.E. 2d 442, 444 (2011).  The anti-indemnification statute has been applied to a variety of contracts that bear "little to no relationship to any ostensible building construction,"[3] and "[a]lthough the Georgia courts have not defined precisely the terms 'building structures, appurtenances, or appliances,' the courts have applied" these terms liberally.[4]  *Id.*

Under O.C.G.A. § 13-8-2(b)'s broad application, an indemnification provision is void if: "(a) the agreement itself is related to 'the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances … and (b) the exculpatory provision purports to protect the indemnitee against the consequences of the indemnitee's sole negligence." *Newton's Crest Homeowners' Ass'n.,* 306 Ga. App. at 215-16.  Langdale argues that the private crossing agreement's indemnification provision is barred by O.C.G.A. § 13-8-2(b) because the agreement relates to a contract for "construction, alteration, repair, or

---

[3] For example, O.C.G.A. 13-8-2(b) has been applied to commercial leases, residential leases, management agreements, rental and maintenance agreements, space lease agreements, and contracts for repair and maintenance within an existing commercial structure.  *See Federal Paper Board Co. v. Harbert-Yeargin, Inc.*, 53 F. Supp. 2d 1361, 1370 (1999) (collecting cases that broadly apply the anti-indemnification statute).

[4] In one instance, the Georgia Court of Appeals found that work on a subdivision property, detention pond, and its spillway "[fell] within the ambit" of the anti-indemnification statute without explaining how the terms "building structure, appurtenances, and appliances" applied to the facts of that case.  *Newton's Crest Homeowners' Ass'n v. Camp*, 306 Ga. 207, 216, 702 S.E.2d 41, 48 (2010) (citing *Federal Paper*, 53 F. Supp. 2d. at 1370 (determining in dicta that large paper machines at a paper mill were *either* appurtenances or appliances when finding that O.C.G.A. § 13-8-2(b) applied) (emphasis added)).

maintenance" of the private crossing and promises to indemnify Norfolk Southern for damages arising from its own negligence.  (Doc. 35-1 at 7, 11 (citing *Milliken & Co.,* 829 S.E. 2d at 113.)  Specifically, Langdale contends that the private crossing is an appurtenance under the statute.

"Appurtenance" is not defined within Georgia law, so it is appropriate to look to the word's plain and ordinary meaning when determining whether the term applies to the private crossing.  *See Fed. Paper*, 53 F.Supp. 2d at 1370, n.15, 16 (N.D. Ga. 1999); *Does v. State*, 290 Ga. 667, 668-69, 725 S.E.2d 234, 235 (2012) (referring to a legal dictionary for the plain and ordinary meaning of words).  Both parties cite *Black's Law Dictionary's* definition of "appurtenance" at the time the private crossing agreement was entered, which defines the term as:

> that which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land. … An article adapted to the use of the property to which is connected, and which was intended to be a permanent accession to the freehold.  A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse … from or across the land of another.

(Doc. 33-1 at 18; 35-1 at 9 (citing *Black's Law Dictionary* (6th ed. 1990)).)  The parties also cite a more recent version of *Black's Law Dictionary*, which provides that an "appurtenance" is "something that belongs or is attached to something else, esp., something that is part of something else that is more important."  (*Id.* (citing *Black's Law Dictionary,* (11th ed. 2019)).)

Neither of the cited meanings definitively place the private crossing within the plain and ordinary meaning of "appurtenance," but Langdale argues the "clear facts support the obvious conclusion" that the private crossing is a right of way or easement, and therefore, an appurtenance.  (Doc. 47 at 8.)

Langdale cites a portion of the private crossing agreement to support its contention that it was granted a right of way to the private crossing:

> [Norfolk Southern] hereby grants unto Licensee [Langdale], insofar as [Norfolk Southern's] title enables it so to do and without warranty, the right to maintain, use and remove an existing private road crossing, hereinafter called "Crossing," upon and across, at grade, the right of way or property and track (whether more than one track) of Railroad running between Macon and Hazlehurst, Georgia, located at Milepost 307-H minus 1375, more or less."

(Doc. 23-1 ¶ 1.)  Langdale specifically emphasizes the phrase "right of way" in this provision of the private crossing agreement, arguing that the "plain, unambiguous language of the Private Crossing Agreement refers to the private railroad crossing as a right of way, which is consistent with the *Black's Law Dictionary* [definition] of an appurtenance."  (Doc. 47 at 9.)  Not so.  This provision of the private crossing agreement refers to the "existing private road crossing … *upon and across*, at grade, the right of way or property and track … of Railroad."  (Doc. 23-1 ¶ 1 (emphasis added).)  That is to say, the quoted portion of the private crossing agreement appears to use the term "right of way" to explain the location of the private crossing on the "property and track … of Railroad," which run with the

railroad right of way—this does not suggest that the crossing itself is a right of way. (Doc. 23 ¶ 1.)

Moreover, railroad rights of way have a specific meaning that is "more than the mere right of passage" associated with general right of ways. *Tompkins v. Atlantic Coast Line R. Co.*, 213 Ga. 48, 50, 96 S.E. 2d. 603, 605 (1957). In fact, railroad rights of way are "more than an easement; [railroad rights of way are], in substance, an interest in land 'special and exclusive in its nature.'" *Id.* The passage of the private crossing agreement that Langdale cites appears to refer to this specific understanding of the railroad's right of way as the agreement describes where the private crossing is. It is certain that Langdale, which was not even permitted to install signage on its own pursuant to the private crossing agreement, was not granted a license to a railroad right of way, which authorizes railroads to commit "any lawful act 'properly incident and connected with' the operation of a railroad." *Tompkins*, 96 S.E. 2d at 605; (Doc. 23-1.)

Langdale has not shown that the private crossing was a right of way, and although Langdale suggests that the private crossing was "a right of way or an easement," Langdale does not make a clear argument regarding easements in its briefs. Rather, Langdale seems to use the term alongside right of way. Langdale quotes *Anthony v. Chicopee Mfg. Corp. of Georgia* to explain its argument that the private crossing is either a right of way or easement:

> Under the general rule that those rights essential to the enjoyment of the demised premises pass as appurtenant thereto, rights of ingress

and egress by the usual way pass to the tenant, although not specified, or the word 'appurtenances' is not employed.  So a tenant is entitled to the maintenance of an entrance which is necessary to the full enjoyment of his use of the premises, although it may not be the only means of access.  Rights of ingress and egress which are not expressly granted must be necessary to the complete enjoyment of the premises for the purpose for which they were rented.

168 Ga. 400, 147 S.E. 887, 888 (1929).  Langdale follows this quotation with the contention that "the obvious conclusion [is] that the private crossing is a right of way or easement, and therefore an appurtenance, as it was used by the defendant Langdale to traverse railroad tracks owned by the plaintiff Norfolk Southern to reach" the Chauncey property.  (Doc. 47 at 8.)  This appears to suggest that the private crossing was appurtenant to Langdale's Chauncey property because the crossing was used to access the property for the use of its premises, even though rights to the crossing were not specifically granted to Langdale with the property.  Admittedly, Langdale's briefing is unclear on this point.

Norfolk Southern's analysis is slightly more persuasive.  Norfolk Southern argues that under Georgia law, "the grant of real estate includes the grant of existing appurtenances and easements."  (Doc. 48 at 10 (citing *Muscogee Mfg. Co. v. Eagle & Phenix Mills,* 126 Ga. 210, 226 (1906).)  Therefore, Norfolk Southern contends that "an appurtenance is something in which a landowner has a property right, such that it passes with real estate."  (Doc. 33-1 at 18.)  However, the private crossing is "not [a] permanent accessio[n] to the land that [is] conveyed with … adjoining property," and therefore, Norfolk Southern concludes it is not an

easement.  (Doc. 48 at 10.)  Continuing this line of reasoning, Norfolk Southern argues that because the private crossing is not an easement and carries no inchoate property rights, the private crossing is not an appurtenance.  (*Id.* (citing *Olsen v. Noble,* 209 Ga. 899, 906 (1953) ("The word 'appurtenances' in a deed only carries easements already existing, and appurtenant to the estate granted.  It will not, therefore, include an inchoate prescriptive right over the land of another.")).

Moreover, Norfolk Southern notes the nature of the private crossing agreement, which specifically grants Langdale a license to use the private crossing, without any property rights.  (Doc. 23-1); *see also Grant v. Haymes*, 164 Ga. 371, 138 S.E. 892, 894 (1927) ("A license, as a term of real estate law, is an authority to do a particular act or series of acts upon another's land, without possessing any estate therein.")  Finally, Norfolk Southern points back to the primary purpose of O.C.G.A. § 13-8-2(b), which was to prevent contractors from indemnifying themselves from latent or difficult to discover defects in construction projects, to argue that the application of the anti-indemnification statute to the private crossing agreement would not remedy the ills the statute was drafted to address.

The Court agrees with Norfolk Southern that the private crossing is not an easement and that it does not carry any property rights associated with an appurtenance.  This interpretation is supported by the terms of the private crossing agreement, which clearly identifies Langdale's rights to the private crossing as a license without any property rights, which can be terminated by either party with thirty-days' notice.  (Doc. 23-1.)  But Norfolk Southern's policy argument is less

persuasive—the scope of O.C.G.A. § 13-8-2(b) has expanded beyond its original purpose of protecting from latent construction defects, as demonstrated by the wide range of cases to which the anti-indemnification statute has been applied. *See Federal Paper*, 53 F. Supp. 2d at 1370 (collecting cases that broadly apply the anti-indemnification statute).

In sum, each party's interpretation of the term "appurtenance" is muddy, as are the cited definitions of appurtenance and cases involving appurtenances. Therefore, there is no clear basis for determining that the private crossing falls within § 13-8-2(b)'s ambit as an appurtenance.   Although the anti-indemnification statute is broad and has been liberally applied to a variety of contracts, it should not be extended to the private crossing agreement with so little support.  It is well established that "[t]he delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt."  *Foster v. Allen,* 201 Ga. 348, 349, 40 S.E.2d 57 (1946) (citation omitted); *see also Piedmont Arbors Condo. Assn. v. BPI Constr. Co.,* 197 Ga. App. 141, 141, 397 S.E.2d 611 (1990) ("any impairment of [the] right [to contract freely] must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation"). Without precedent or a definition of appurtenance under Georgia law that clearly includes the private crossing at issue, it would be inappropriate for this Court to expand Georgia law by finding that the private crossing agreement is barred by O.C.G.A. 13-8-2(b).

Accordingly, the indemnification clause remains valid.

*2. Even if the indemnification clause was barred by Georgia's anti-indemnification statute, the private crossing agreement is saved by its insurance requirement*

Norfolk Southern argues that even if Georgia's anti-indemnification statute bars the private crossing agreement, the agreement's insurance requirement provision would save the contract.  (Doc. 33-1 at 22.)  Insurance requirements can render O.C.G.A. § 13-8-2(b) inapplicable because such a clause "shifts the risk of loss to the insurance company, regardless of which party is at fault."  *ESI, Inc. of Tennessee v. Westpoint Stevens, Inc.*, 254 Ga. App. 332, 333, 562 S.E. 2d 198, 199 (2002) (citing *Tuxedo Plumbing & Co. v. Lie-Nielsen*, 254 Ga. 27, 28, 262 S.E.2d 794 (1980)).   The private crossing agreement's insurance requirement clause provides:

> Prior to entry on [Norfolk Southern's] property or use of the Crossing, [Langdale] shall procure and maintain during the life of this Agreement a policy of general liability insurance, containing contractual liability coverage, with a combined single limit of not less than $2,000,000 each occurrence.  Said insurance shall be of such form and content as may be acceptable to [Langdale].  As evidence of said insurance, a certificate of insurance shall be furnished to and approved by the Manager Insurance, Norfolk Southern Corporation, … prior to entry on [Norfolk Southern's] property or use of the Crossing.

(Doc. 23-1 ¶ 8(a)).

Langdale argues that the insurance requirement cannot save the private crossing agreement if Georgia's anti-indemnification statute applies because the

insurance requirement provides that "the insurance required herein shall not limit the liability assumed by [Langdale] under this Agreement."  (Doc. 35-1 at 14; Doc. 23-1 ¶ 8(b).)  In support of this argument, Langdale cites *Havenbrook Homes, LLC., v. Infinity Real Estate Investments, Inc.*, in which the Georgia Court of Appeals held:

> The use of the indemnification provision in conjunction with the insurance provision would completely insulate the Havenbrook defendants from any and all liability regardless of who was at fault and would shift the burden to the insurance company only to the extent of the policy limits.  Such a contractual provision violates the landlord's statutory duties and is barred by public policy.  As a result, the indemnification and insurance provisions in Sharon's rental agreement are void under O.C.G.A. § 13-8-2(b).

356 Ga. App. 477, 486, 847 S.E. 2d 840, 848 (2020) (citing *Milliken & Co.*, 829 S.E. 2d at 115*)*. Langdale argues that the indemnification provision in *Havenbrook Homes* was not saved by its insurance requirement because "the insurance provision expressly shifted all liability beyond the insurance limits to [the party contractually obligated to indemnify against the other party's sole negligence.]" (Doc. 35-1 at 14.)

"[W]here parties to a business transaction mutually agree that insurance will be provided as part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party."  *Tuxedo Plumbing & Heating Co., Inc., v. Lie-Nielsen*, 245 Ga.

27, 28, 262 S.E. 2d 794, 795 (1980).  Liability beyond insurance limits has not been addressed in any of the cases that the parties cite, except *Havenbrook Homes*, which is complicated by the special landlord-tenant relationship between the parties.  *See* 356 Ga. App. at 486 ("Such a contractual provision violates the landlord's statutory duties and is barred by public policy.")     But a clause that required Langdale to retain liability beyond the insurance amount does appear to violate the requirement that "the bargaining parties … must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party."  *Tuxedo Plumbing & Heating Co.,* 245 Ga. at  28.

However, as Norfolk Southern argues, the provision of the private crossing agreement at issue, paragraph 8(b), which provides that "the insurance required herein shall not limit the liability assumed by [Langdale] under this agreement," is severable.  (Doc. 48 at 16, fn 5.)  Although the private crossing agreement does not contain a severability clause, each of the parties have acknowledged that severability is appropriate if a provision of the contract is void.  (Doc. 35-1 at 18; 48 at 6, n.5.)  Moreover, "where the agreement [between parties] is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and [only some] of the promises are illegal, the promises which are not illegal will be held to be valid."  *Vegesina*, 257 Ga. App. at 694 (citing *O.H. Carter Co. v. Buckner*, 160 Ga. App. 627, 628-629, 287 S.E.2d 636 (1981).  Here, the private crossing agreement contains several promises, indicating that the parties intended for the contract to be severable.  *Id.* at 695.  "If a contract is

severable, the part of the contract that is valid will not be invalidated by a separate and distinct part that is unenforceable." *Vegesina v. Allied Informatics, Inc.*, 257 Ga. App. 693, 694, 572 S.E.2d 51, 53 (2002) (citing O.C.G.A. § 13-1-8(a); *Circle Appliance Leasing v. Appliance Warehouse,* 206 Ga. App. 405, 407(2), 425 S.E.2d 339 (1992)).  Severing paragraph 8(b) and ensuring that Langdale would not retain liability beyond the limits of its insurance would appropriately shift the risk of loss entirely to the insurer and preserve the valid provisions of the contract. *Id.*

Accordingly, the Court is persuaded that even if the anti-indemnification statute applied, the insurance requirement provision would save the private crossing agreement from O.C.G.A. § 13-8-2(b).

### 3. *Declaratory judgment finding that Langdale is required to indemnify Norfolk Southern is appropriate*

Because it cannot be established that the private crossing is an appurtenance, and because the insurance requirement would save the private crossing agreement even if O.C.G.A. § 13-8-2(b) barred the indemnification clause, declaratory judgment that Langdale has a duty to indemnify Norfolk Southern is appropriate.  "[A]ny court of the United States, upon a filing of the appropriate pleading [in a case of actual controversy], may declare the rights and other legal relations of any interested party seeking such declaration, whether or not relief is or could be sought."  28 U.S.C. § 2201.  An actual controversy exists where "the facts alleged, under all the circumstances, [shows] that there is a

substantial controversy, between parties [with] adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F. 33 409, 414 (11th Cir. 1995). Here, the parties have adverse legal interests, and the ongoing lawsuits against Norfolk Southern by the parties involved in the collisions at the private crossing, as well as whatever additional damages there may be from the collisions, are of sufficient immediacy and reality to warrant declaratory judgment. *Id.* The Court agrees that Norfolk Southern has submitted an actual controversy due to Langdale's failure to comply with its contractual obligations under the valid private crossing agreement.

Accordingly, Norfolk Southern's motion for declaratory judgment as to Langdale's contractual duty to indemnify Norfolk Southern is **GRANTED.** Langdale's motion for summary judgment as to Norfolk Southern's motion for declaratory judgment is **DENIED.**

## B. Langdale breached its contractual duty to indemnify Norfolk Southern

Under Georgia law, claims for breach of contract require a breach of contractual duty and resulting damages to the party who has the right to complain about the contract being broken. *SAWS at Seven Hills, LLC, v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784, 895 S.E.2d 270, 784 (2017). Pursuant to the private crossing agreement, Langdale was required to "indemnify and save harmless"

Norfolk Southern "from and against all liability, claims, loss, damage, expense, or costs for personal injuries (including death) and/or property damage to whomsoever or whatsoever, occurring or arising in any manner from railroad operations at or in the vicinity of the Crossing."  (Doc. 23-1 ¶ 6).  After each of the two collisions at the private crossing, Norfolk Southern requested indemnification from Langdale according to the terms of the private crossing agreement, and Langdale failed to indemnify.  This was a breach of Langdale's contractual duties. Norfolk Southern suffered damages as a result of this breach in the form of property damage to its equipment and the crossing, loss of use of its equipment as a result of the accidents, as well as the costs of litigation from defending itself in lawsuits related to the accidents.[5]   Therefore, Norfolk Southern is entitled to summary judgment on its claim for breach of contract for failure to indemnify.

Accordingly, summary judgment for Norfolk Southern's breach of contractual duty for failure to indemnify claim is **GRANTED.**  Langdale's motion for summary judgment as to Norfolk Southern's breach of contract for failure to indemnify claim is **DENIED.**

---

[5] In its response to Norfolk Southern's Rule 56 statement of undisputed facts, Langdale disputes that Norfolk Southern suffered damages as a result of the collisions at the private crossing. (Doc. 47-1 ¶ 36.)  However, this dispute seems to rely on Langdale's interpretation of O.C.G.A. § 13-8-2(b) and Langdale's understanding that it was not liable for Norfolk Southern's damages. (*Id.*  ("The defendant Langdale disputes that the plaintiff Norfolk Southern has suffered damages, and denies any liability regarding the plaintiff Norfolk Southern's alleged damages.").) It is undisputed that there were collisions at the private crossing and that Norfolk Southern has been sued by the estate of Morgan Sheffield.  (Doc. 47-1 ¶¶ 26, 27, 32.)  These facts support a finding that Norfolk Southern suffered damages and leaves the amount of damages to be determined in future proceedings.

**C. There are insufficient facts to determine whether Langdale breached its contractual obligations by failing to control vehicular traffic at the private crossing**

The private crossing agreement includes a clause requiring Langdale to control all vehicular traffic at the private crossing:

> In each instance when a vehicle approaches the Crossing, it shall stop and shall not proceed over said track of Railroad until the driver has ascertained that no train or other rain equipment of [Norfolk Southern] is approaching the Crossing.  To that end, [Langdale] will, at [Langdale's] expense, provide for the installation and maintenance of such information, caution, traffic signs and barricades, including automatic warning devices, deemed necessary by [Norfolk Southern] or required by any authorized public authority.  At [Norfolk Southern's] option, such protective devices may be installed and maintained by [Norfolk Southern] at the expense of [Langdale].  [Norfolk Southern's] failure to require protective signs, barricades, or automatic warning devices shall not affect [Langdale's] liability under the terms of this Agreement.

(Doc. 23-1 ¶ 5.)  Norfolk Southern argues that the two accidents at the private crossing show that Langdale breached its contractual obligations by failing to control vehicular traffic at the private crossing.  (Doc. 33-1 at 28.)  Langdale contends that the requirement that it control all vehicular traffic is "an illusory, and impossible, promise that [Langdale] will stop each and every single vehicle entering and/or exiting the private railroad crossing unless it is safe to do so."  (Doc. 35-1 at 15.)  A promise is illusory when the "[w]ords of promise … by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue."  *Kemira, Inc. v.*

-22-

*Williams Investigative & Sec. Servs, Inc.*, 215 Ga. App. 194, 198, 450 S.E. 2d 427, 431 (1994) (citation omitted).  Impossibility is a narrow defense under Georgia law. *See Felder v. Oldham*, 199 Ga. 820, 825, 35 S.E.2d 497, 500 (1945).  "It is generally well settled that subjective impossibility, that is, impossibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation."  *Brights v. Stubbs Properties, Inc.*, 133 Ga. App. 166, 166-67, 210 S.E.2d 379, 379-80 (1974).

Langdale argues that it could not effectively control traffic pursuant to the private crossing agreement because the agreement prevents Langdale from adding any additional signage or safety mechanisms to the private crossing unless Norfolk Southern deems the additional measures necessary.  Langdale also contends that there is no evidence that Norfolk Southern ever requested that Langdale take any additional precautions to ensure safety at the private crossing beyond the signage already in place.  (Doc. 35-1 at 16.)  Norfolk Southern disagrees and argues that although Langdale could not install additional signage of its own accord, Langdale could have taken a variety of steps to ensure that it could control vehicular traffic at the crossing.  By way of example, Norfolk Southern suggests that Langdale could have implemented policies, procedures, rules, or regulations for its employees and invitees who used the private crossing in order to control vehicular traffic.  (Doc. 48 at 20.)

Although Norfolk Southern makes several suggestions as to what Langdale could have done to control vehicular traffic at the private crossing, genuine issues of fact remain as to what steps Langdale did take to control vehicular traffic and whether any possible action by Langdale could adequately control traffic without the power to add signage or make other alterations to the private crossing. These issues of genuine fact may simply be a result of the parties focusing their briefing on the indemnification issue, but nevertheless, the Court cannot conclude based on the present record that Langdale breached its contractual duties by failing to control the vehicular traffic according to the standards for summary judgment. *See* Fed. R. Civ. P. 56(c) (summary judgment should be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law"); *Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224 (11th Cir. 2002). For the same reasons, the Court cannot conclude that Langdale did not breach its contractual duties by failing to control vehicular traffic.

Accordingly, both Norfolk Southern and Langdale's claims for summary judgment as to breach of contractual duty for Langdale's failure to control vehicular traffic at the private crossing are **DENIED.**

**D. Langdale is not entitled to summary judgment as to Norfolk Southern's claim for litigation expenses**

Norfolk Southern claims litigation expenses pursuant to O.C.G.A. § 13-6-11 for Langdale's failure to accept its indemnification obligations in bad faith.  (Doc. 23 ¶¶ 80-84.)  The statute provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11.  Norfolk Southern argues that the record demonstrates bad faith because Langdale failed to indemnify Norfolk Southern despite multiple requests for indemnification.  Norfolk Southern specifically contends that Langdale ignored each of its communications regarding indemnification, requiring Norfolk Southern to file this lawsuit before it received any response from Langdale.

Langdale moves for summary judgment on Norfolk Southern's claim for litigation expenses on the basis that Langdale is entitled to summary judgment as to the rest of Norfolk Southern's claims.  Therefore, Langdale argues that there is no evidence of "any 'dishonest purpose' or 'moral obliquity' [by Langdale], as the indemnification provision is void as against Georgia public policy, and it follows that there cannot be any 'dishonest purpose' or 'breach of known duty through some motive of interest or ill will' [by Langdale] for the same reason."   (Doc. 35-1 at 18.)  Langdale makes no other argument against Norfolk Southern's bad faith claim.  But as discussed herein, Norfolk Southern is granted declaratory judgment as to its right to indemnification and summary judgment on its breach of contractual

duty for failure to indemnify. Additionally, Norfolk Southern's claim for breach of contractual duty for failure to control vehicular traffic survives these motions for summary judgment.

"Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under O.C.G.A. § 13-6-11, are generally questions for the jury to decide." *Garrett v. Women's Health Care of Gwinette, P.C.*, 243 Ga. App. 53, 54-55, 532 S.E.2d 164, 167 (2000). Under these facts, it is possible that a jury could find that Langdale acted in bad faith. Accordingly, Langdale's motion for summary judgment as to Norfolk Southern's claim for litigation expenses is **DENIED.**

### III. CONCLUSION

As explained above, Norfolk Southern's motion (Doc. 33) is **GRANTED in part** as to its claims for declaratory judgment on Langdale's duty to indemnify and breach of contractual duty for failure to indemnify and **DENIED in part** as to its claim for breach of contractual duty for failure to control vehicular traffic. Langdale's motion (Doc. 35) is **DENIED.**

**SO ORDERED** this 20th day of January, 2023.

> *s/Hugh Lawson*
> **HUGH LAWSON, SENIOR JUDGE**

aem